JS-6

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

ORANGE COUNTY COASTKEEPER, a California nonprofit public benefit corporation,

Plaintiff,

v.

COAST LINE METALS, INC., a California stock corporation; THE ZENK FAMILY PARTNERSHIP, a California limited partnership,

Defendants.

Case No. 8:26-cv-01165-FWS-MBK

**CONSENT DECREE**

**(Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq*.)**

## CONSENT DECREE

**WHEREAS,** Orange County Coastkeeper ("Coastkeeper") is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Costa Mesa, California;

**WHEREAS,** Orange County Coastkeeper's mission is to protect swimmable, drinkable, fishable waters and to promote watershed resilience throughout our region.

**WHEREAS**, Coast Line Metals, Inc. ("Coast Line Metals") operates a facility at 440 West Taft Ave, Orange, CA 92865 (the "Facility");

**WHEREAS**, Zenk Family Partnership ("Zenk") owns the real property upon which the Facility operates;

**WHEREAS**, Coast Line Metals is a facility with a main industrial process of receiving ferrous and non-ferrous metal which it then sorts, cuts, and ships to third parties;

**WHEREAS,** Coast Line Metals is categorized under Standard Industrial Classification ("SIC") Code 5093, Scrap and Waste Materials;

**WHEREAS**, storm water discharges associated with industrial activity at the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") Scrap Metal Permit No. CAG18001, Order No. R8-2018-0069 ("Scrap Metal Permit" or "Permit"), and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251, *et seq*. ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, the operations at the Facility result in discharges of pollutants into waters of the United States and are regulated by the Clean Water Act Sections 301(a) and 402. 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, on January 9, 2026, Coastkeeper sent a notice of intent to file suit ("60-Day Notice") to Coast Line Metals, Zenk, their registered agents for service of process, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Director of the Regional Water Quality Control Board, Santa Ana Region ("Regional Board"), and the Regional Administrator of EPA Region IX, alleging violations of the Clean Water Act and the Scrap Metal Permit at the Facility;

**WHEREAS**, on March 10, 2026, Coastkeeper, Coast Line Metals, and Zenk entered into a tolling agreement (the "Tolling Agreement") to provide the parties with more time for settlement discussions and extend litigation deadlines to May 11, 2026;

**WHEREAS**, on May 12, 2026, Coastkeeper filed a complaint against Coast Line Metals and Zenk in the Central District of California, Civil Case No. 8:26-cv-01165-FWS-MBK (the "Complaint");

**WHEREAS**, Plaintiff's Complaint alleged violations of the General Permit and the Clean Water Act for Coast Line Metals' discharges of pollutants to the Collins Channel, which discharges to the Santa Ana River, both waters of the United States, which then flows to the Pacific Ocean (collectively referred to as the "Receiving Waters");

**WHEREAS**, Coastkeeper, Coast Line Metals, and Zenk (together, the "Settling Parties" or "Parties") agree that it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the 60-Day Notice without further proceedings; and

**WHEREAS**, all actions taken by Coast Line Metals pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local rules and regulations.

**NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1. The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A).

2. Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations are taking place is located within this District.

3. The Complaint states a claim upon which relief may be granted against Coast Line Metals pursuant to Section 505 of the CWA, 33 U.S.C. § 1365.

4. Coastkeeper has standing to bring this action.

5. The Court shall retain jurisdiction over this action for purposes of interpreting, modifying, or enforcing the terms of this Consent Decree, or as long

thereafter as necessary for the Court to resolve any motion to enforce this Consent Decree, but only regarding issues raised within the Term of this Consent Decree.

## I. OBJECTIVES

6. It is the express purpose of the Settling Parties through this Consent Decree to further the objectives of the Clean Water Act, and to resolve all issues alleged by Coastkeeper in its 60-Day Notice. These objectives include compliance with the provisions of this Consent Decree, compliance with all terms and conditions of the General Permit, and compliance with all applicable sections of the CWA.

7. In light of these objectives and as set forth fully below, Defendants agree to comply with the provisions of this Consent Decree, terms and conditions of the Scrap Metal Permit, and all applicable sections of the CWA at the Facility.

## II. AGENCY REVIEW AND CONSENT DECREE TERM

### A. AGENCY REVIEW OF CONSENT DECREE

8. Agency Review: Coastkeeper shall submit this Consent Decree to the United States Department of Justice and the EPA (together, the "Federal Agencies") for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) calendar days after receipt by the Federal Agencies, as evidenced by certified return receipts, or upon the date that the Federal Agencies provide a no objection letter, whichever is earlier (the "Agency Review Period").

9. Court Notice: Coastkeeper shall notify the Court of the receipt date by the Federal Agencies, as required by 40 C.F.R. § 135.5, to coordinate the Court's calendar with the 45-day review period.

10. Entry of Consent Decree: Promptly following the expiration of the Agency Review Period, Coastkeeper shall submit the Consent Decree to the Court for entry.

### B. DEFINITIONS

11. Unless otherwise expressly defined herein, terms used in this Consent Decree which are defined in the CWA or in regulations or rules promulgated under the CWA have

the meaning assigned to them in the statutes or regulations or rules. Whenever terms listed below are used in this Consent Decree, the following definitions apply:

a. "BMPs" means Best Management Practices.

b. "Certified Person" shall have the same meaning as the Scrap Metal Permit.

c. "Consent Decree" means this Consent Decree and any attachments or documents incorporated by reference.

d. "Day" or "day" means a calendar day. In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

e. "Discharge Point" means each outfall and discharge location designated in the SWPPP for Coast Line Metals.

f. "Effective Date" means the effective date of this Consent Decree, which shall be the date of full execution by the Parties.

g. "Entry Date" means the day this Consent Decree is approved and entered by the Court.

h. "SM-QSD" and "SM-QSP" shall have the same meaning as defined in the Scrap Metal Permit.

i. "Qualifying Storm Event" or "QSE" shall have the definition set forth in the Scrap Metal Permit.

j. "Reporting Year" means the period from July 1 of a given calendar year to June 30 of the following calendar year.

k. "SMARTS" means the California State Water Resources Control Board's Stormwater Multiple Application and Report Tracking System.

l. "SWPPP" means a Storm Water Pollution Prevention Plan as defined in the Scrap Metal Permit.

m. "Term" means the period between the Effective Date and the "Termination Date."

n. "Termination Date" means the latest of:

i. Three (3) years from the Effective Date, unless there is an ongoing, unresolved formal dispute regarding Defendants' compliance with this Consent Decree;

ii. If there is an ongoing, unresolved formal dispute regarding Defendants' compliance with this Consent Decree, the Consent Decree will terminate within seven (7) days following the earlier of: (1) notice by the Settling Party that invoked Dispute Resolution procedure that the dispute has been fully resolved, or (2) an order of the Court resolving the dispute;

iii. Notwithstanding the above, if the Regional Board approves a Notice of Termination, the Termination Date shall be the later of: (1) the date of the Regional Board's Approval of the Notice of Termination for Coast Line Metals, or (2) seven (7) calendar days from Coast Line Metals' completion of all payments required by this Settlement Agreement.

## III. COMMITMENTS OF THE SETTLING PARTIES

### A. STORM WATER POLLUTION CONTROL BEST MANAGEMENT PRACTICES

12. <u>Non-Storm Water Discharge Prohibition</u>: Any unauthorized non-storm water discharge, as defined in the Scrap Metal Permit, shall be a violation of this Consent Decree.

13. <u>Current and Additional Best Management Practices</u>: In addition to maintaining the current BMPs described in Coast Line Metals' SWPPP, Coast Line Metals shall (1) develop and implement BMPs identified herein, and (2) develop and implement

additional BMPs necessary to comply with the provisions of this Consent Decree and the Scrap Metal Permit.

14. Non-Structural BMPs: Within thirty (30) days of the Effective Date, Coast Line Metals shall:

a. Remove unusable equipment and materials from the Facility;

b. Acquire PM-10-compliant mechanical sweeper and employ a daily sweeping protocol for the entire facility, including hand-sweeping of areas inaccessible by the mechanical sweeper. A sweeping log shall be kept and maintained on site to demonstrate compliance with this provision of the Consent Decree;

c. Store all metal turnings under permanent, storm-resistant canopies or roofing, or in watertight roll-offs with solid lids to prevent exposure to storm water;

d. Store all chemicals and hazardous materials under permanent roofing and ensure secondary containment. Maintain labels on all chemicals and hazardous materials; and

e. Perform daily inspections to identify leaking equipment, vehicles, and scrap metal containers. Deploy drip pans below leaking equipment, vehicles, and scrap metal containers. Remove fluids from drip pans on a weekly basis and as part of a Rain Event Action Plan ("REAP").

15. Develop a REAP: Within thirty (30) days of the Effective Date, Coast Line Metals shall revise and implement a REAP pursuant to Section E.1(c)(1)(b)(vi) of the Scrap Metal Permit. Coast Line Metals shall keep records of compliance with the REAP as described in the Permit and shall provide those records to Coastkeeper upon request, in compliance with Paragraph 37 of this Consent Decree.

16. Structural and Advanced BMPs: Coast Line Metals shall:

a. Within thirty (30) days of the Effective Date, prepare a hydrology report to establish storage and treatment rates for treating the volume of runoff generated from the 95th percentile rain event, and submit that report to Coastkeeper for review and comment. Coastkeeper shall have 30 days to review and provide written comments, which shall be incorporated into the report by Coast Line Metals within 15 days.

b. No later than June 1, 2027, Coast Line Metals shall prepare a stormwater treatment plan to treat the volume of runoff established by the hydrology report. The treatment plan should specify the treatment process, including specific treatment stages. The treatment plan should be supported by bench-scale and laboratory testing results using runoff from the Coast Line Metals Facility. Coast Line Metals shall submit the treatment plan to Coastkeeper for review and comment. Coastkeeper shall have 30 days to review and provide written comments, which shall be incorporated into the report by Coast Line Metals within 15 days. The treatment plan shall thereafter be submitted for approval to the Santa Ana RWQCB. Any subsequent modifications by the agency shall also be provided to Coastkeeper. Upon the treatment plan's final approval by the agency, it shall be implemented as soon as possible, but no later than 45 days. In the event that 45 days is not technically feasible, the parties will meet and confer in good faith to extend the implementation deadline.

c. The hydrology report described in paragraph 16.a and the treatment plan described in paragraph 16.b must be prepared under the direction of a California licensed professional engineer experienced in hydrology and treatment system design.

**B. MONITORING AT THE FACILITY**

17. Monitoring and Reporting Program: Within thirty (30) days of the Effective Date, Coast Line Metals shall revise and implement a Monitoring and Reporting Program ("MRP") as described in the Scrap Metal Permit. Coast Line Metals shall submit the MRP to Coastkeeper for review and comment. Coastkeeper shall have 30 days to review and provide written comments, which shall be incorporated into the MRP by Coast Line Metals within 15 days.

18. Certified Person: Sample collection, preservation and handling shall be conducted by a Certified Person, who has undergone appropriate training pursuant to the Scrap Metal Permit, or a SM-QSD or SM-QSP.

19. Sampling Frequency: During the Term, Coast Line Metals shall collect samples of storm water discharge from each Discharge Point(s) during no fewer than four (4) Qualifying Storm Events ("QSEs") per Reporting Year. Coast Line Metals shall sample at least two (2) QSEs during each half of the Reporting Year. If Coast Line Metals is unable to collect samples from two (2) QSEs during the first half of the reporting year, it shall make every effort to collect all four (4) samples in the second half of the Reporting Year.

20. Documentation: To document the storm water discharge and discharge location, an employee shall take photographs of the sample bottles from the storm water discharge after the samples are collected (the "Sampling Photographs").

21. Rain Gauge: Coast Line Metals shall maintain a recording rain gauge capable of recording hourly rainfall to 0.1 inches each hour. Coast Line Metals shall maintain the rain gauge in accordance with the manufacturer's recommendations, maintain records of all maintenance and rain data, and provide such rain gauge data to Coastkeeper upon a request for documentation made pursuant to Paragraph 37.

22. Sampling Parameters: All samples collected pursuant to this Consent Decree shall be analyzed, at minimum, for the parameters listed in Table 1.

23. Laboratory and Holding Time: Except for pH, specific conductance and turbidity samples, Coast Line Metals shall cause delivery of all samples to a California state certified environmental laboratory for analysis within allowable hold times, pursuant to 40 C.F.R. Part 136. Analysis of pH, specific conductance, and turbidity will be completed onsite using a calibrated portable instrument for these parameters in accordance with the manufacturer's instructions.

24. Detection Limit: Coast Line Metals shall request that the laboratory use analytical methods adequate to detect the individual contaminants at or below the values specified in the General Permit and Table 1 below.

25. Reporting: Coast Line Metals shall provide complete laboratory results of all samples collected at the Facility to SMARTS in accordance with the Scrap Metal Permit and shall provide copies to Coastkeeper within thirty (30) days of receiving the final laboratory report with the results.

**C. REDUCTION OF POLLUTANTS IN DISCHARGES**

26. Table 1 Numeric Limits: Coast Line Metals shall develop and implement BMPs to reduce pollutants in storm water at the Facility to levels below those in Table 1.

TABLE 1

| Analytes | Values | Source of Limit |
|---|---|---|
| pH | 6.5 - 8.5 | Permit Action Level |
| Oil and Grease (O&G) | 15 mg/L | Permit Action Level |
| Turbidity | 250 NTU | Permit Action Level |
| Specific Conductance | 2000 µmhos/cm | Permit Action Level |
| Zinc (Zn) | 0.16 mg/L | Permit Action Level |
| Lead (Pb) | 0.122 mg/L | Permit Action Level |
| Aluminum (Al) | 0.75 mg/L | Permit Action Level |
| Copper (Cu) | 0.0189 mg/L | Permit Action Level |
| Iron | 1.0 mg/L | Permit Action Level |
| Chemical Oxygen Demand | 120 mg/L | Permit Action Level |

27. Action Plan Trigger: Starting in the 2027-2028 Reporting Year, the action plan requirements set forth in Paragraph 28 shall be triggered upon the following events: (1) a single sample exceeds the limit by two times (except for pH); or (2) the annual average for any pollutant exceeds the limit; or, (3) for pH, if a sample falls outside of the range of 6.5 to 8.5 pH units.

28. Action Plan Requirement: Starting in the 2027-2028 Reporting Year, and for the remainder of the Term, if Coast Line Metals triggers an Action Plan as described in Paragraph 27, Coast Line Metals shall prepare and submit to Coastkeeper a plan for reducing and/or eliminating the relevant discharge of pollutants for the Facility ("Action Plan") that complies with the requirements of a Phase III Corrective Action Plan pursuant to the Scrap Metal Permit. Action Plans must be prepared by a SM-QSD and a SM-QSP and all engineering and hydrology aspects of the Phase III Corrective Action Plan must be certified by a California licensed professional engineer. No more than one Action Plan will be required in any given year.

a. Action Plan Requirements: Each complete Action Plan submitted shall include at a minimum: (1) the identification of the contaminant(s) discharged in excess of the numeric limit(s); (2) an assessment of the source of each contaminant exceedance; (3) the identification of additional BMPs that shall be implemented to achieve compliance with the Table 1 Value(s); and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure all BMPs are implemented as soon as possible, but in no event later than October 1 following the submittal of the Action Plan, unless a later implementation date is mutually agreed upon by the Settling Parties.

b. Action Plan Review: Coastkeeper shall have thirty (30) days upon receipt of Coast Line Metals' complete Action Plan to provide Coast

Line Metals with comments. Within fourteen (14) days of receiving Coastkeeper's proposed revisions to an Action Plan, Coast Line Metals shall consider each of Coastkeeper's recommended revisions and accept them or justify in writing why any comment is not incorporated. Action Plan(s) developed and implemented pursuant to this Consent Decree are an obligation of this Consent Decree. Any disputes as to the adequacy of an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below.

c. Coast Line Metals shall revise the Facility's SWPPP within thirty (30) days of completion of the Action Plan to reflect the changes required by the Action Plan. Coast Line Metals shall notify Coastkeeper in writing when the Action Plan has been implemented and shall submit the revised SWPPP to Coastkeeper for review and comment.

d. <u>Action Plan Payments</u>: Coast Line Metals shall pay Five Thousand Dollars ($5,000) each time an Action Plan is submitted to Coastkeeper at the same time that the Action Plan is submitted. Payments shall be made to "Orange County Coastkeeper" via overnight mail to Orange County Coastkeeper, 3151 Airway Avenue, Suite F-110, Costa Mesa, CA 92626. Failure to submit a payment as required under this Paragraph will constitute a breach of the Consent Decree.

## F. EMPLOYEE TRAINING

29. Within thirty (30) days of the Effective Date, Coast Line Metals shall develop and implement an employee training program for all employees that ensures that all employees are properly trained to perform the required activities to maintain compliance with the Scrap Metal Permit, the Facility's SWPPP, the MRP, and this Consent Decree. General storm water awareness training is required of all new employees within thirty (30)

days of employment, and all employees must receive refresher training on an annual basis pursuant to the Scrap Metal Permit.

30. Training Records: Coast Line Metals shall maintain training records to document compliance with this section, including sign-in sheets indicating which employees were trained, and shall provide Coastkeeper with a copy of such records if requested in accordance with Paragraph 37.

**G. STORM WATER POLLUTION PREVENTION PLAN**

31. SWPPP: Within thirty (30) days of the Effective Date, Coast Line Metals shall amend the Facility's SWPPP to incorporate the requirements of the Scrap Metal Permit and this Consent Decree.

32. Revising the SWPPP: Coast Line Metals shall revise the Facility's SWPPP if there are any significant changes in Coast Line Metals' operations, including but not limited to changes to storm water discharge point(s) or significant changes/additions to the BMPs at Coast Line Metals, or implementation of an Action Plan within thirty (30) days of the occurrence of any of the above-listed events.

33. Commenting on Revised SWPPPs: Coast Line Metals shall submit each revised SWPPP to Coastkeeper for review and comment within thirty (30) days of its completion or revision. Coastkeeper shall provide comments, if any, to Coast Line Metals within thirty (30) days of receipt of the SWPPP. Within thirty (30) days of receiving Coastkeeper's comments on the SWPPP, Coast Line Metals shall accept and incorporate Coastkeeper's comments into the SWPPP or, alternatively, justify in writing why any comment is not being incorporated. Any disputes as to the adequacy of a SWPPP and/or Coast Line Metal's failure to incorporate Coastkeeper's comments shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below.

**H. COMPLIANCE MONITORING**

34. Coastkeeper may conduct up to one (1) Facility inspections ("Facility Inspection") per Reporting Year for the purpose of ensuring compliance with this Consent Decree and the Scrap Metal Permit. In the event of a dispute regarding Coast Line Metals' compliance with this Consent Decree and provided a Facility Inspection would be relevant to resolving the Parties' dispute, the Parties agree to meet and confer regarding one additional Facility Inspection at Coastkeeper's request. Coastkeeper shall not unreasonably request, and Coast Line Metals shall not unreasonably deny, the additional Facility Inspection. Any Facility Inspection shall occur during normal business hours, and Coastkeeper will provide Coast Line Metals with at least forty-eight (48) hours' notice before a Facility Inspection. For any Facility Inspection requested to occur in wet weather, Coastkeeper shall be entitled to adjust timing or reschedule during normal business hours in the event the forecast changes and anticipated precipitation appears unlikely and thus frustrates the purpose of visiting the Facility in wet weather. Notice will be provided by electronic mail to the individual(s) designated below at Paragraph 61. Coastkeeper shall be permitted to take photographs, video recordings, and conduct storm water sampling during any Facility Inspection.

35. <u>Document Provision</u>: During the Term, Coast Line Metals shall notify and submit documents to Coastkeeper as follows:

a. Coast Line Metals shall copy Coastkeeper on all compliance documents, monitoring and/or sampling data, written communications and/or correspondences, or any documents related to storm water quality at the Facility that are submitted to the Regional Board, the State Board, and/or any state or local agency, county or municipality; and

b. Within seven (7) business days of receipt by Coast Line Metals, Coast Line Metals shall send to Coastkeeper any compliance document,

inspection report, written communication and/or correspondence, or any document related to storm water quality at the Facility received by Coast Line Metals from the Regional Board, the State Board, and/or any state or local agency, county, municipality. Coast Line Metals shall email electronic copies of documents to Coastkeeper at the relevant notice address contained below.

36. Compliance Monitoring. Coast Line Metals agrees to partially defray costs associated with Coastkeeper's monitoring of Coast Line Metals' compliance with this Consent Decree in the amount of Thirty-Five Thousand Dollars ($35,000.00) until the Termination Date. Payment shall be made in three installments: the first installment of Fifteen Thousand Dollars ($15,000.00) within thirty (30) days of the Entry Date, the second installment of Ten Thousand Dollars ($10,000.00) within one (1) year of the Entry Date, and the third installment of Ten Thousand Dollars ($10,000.00) within two (2) years of the Entry Date. The payment shall be made via check, made payable to: "Orange County Coastkeeper" via overnight mail to Orange County Coastkeeper, 3151 Airway Avenue, Suite F-110, Costa Mesa, CA 92626. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

**I. MAINTAINING RECORDS AND RECORD REQUESTS**

37. Coast Line Metals shall maintain records, which may include photographs, to document compliance with all terms of this Consent Decree and the Scrap Metal Permit, including, but not limited to Paragraphs 14, 15, 16, 17, 21 and 30. Coastkeeper can request a copy of these records in writing, and Coast Line Metals shall provide Coastkeeper with a copy of such requested records within fourteen (14) days of receipt of a written request from Coastkeeper for those records.

**J. ENVIRONMENTAL MITIGATION, LITIGATION FEES AND COSTS, STIPULATED PENALTIES, AND INTEREST**

38. Environmental Mitigation Project: To fund environmental project activities that will reduce or mitigate the impacts of storm water pollution from industrial activities occurring in and around the Collins Channel, which discharges to the Santa Ana River, Coast Line Metals agrees to make a payment totaling Fifteen Thousand Dollars ($15,000.00) to be paid in two installments: the first installment of Seven Thousand Five Hundred Dollars ($7,500.00) made within one (1) year of the Entry Date, and the second installment of Seven Thousand Five Hundred Dollars ($7,500.00) made within two (2) years of the Entry Date. Payment shall be made to Rose Foundation, payable to Rose Foundation and sent via overnight mail to 201 4th Street, Suite 102, Oakland, California 94607. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

39. Coastkeeper's Fees and Costs: Coast Line Metals agrees to pay a total of Sixty-Five Thousand Dollars ($65,000.00) to Coastkeeper to partially reimburse Coastkeeper for their investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter within thirty (30) days of the Entry Date. The payment shall be made payable to Orange County Coastkeeper and delivered by overnight mail: Orange County Coastkeeper, 3151 Airway Ave., Suite F-110, Costa Mesa, CA 92626, unless made via wire transfer. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

40. Stipulated Payment: If Coast Line Metals fails to submit to Coastkeeper any payment, document, report, or communication required by this Consent Decree, Coastkeeper shall provide written notice to Coast Line Metals of such missed deadline. Coast Line Metals shall have five (5) business days from receipt of such notice to respond to Coastkeeper, and if necessary, cure such delinquency. If the Facility fails to respond

and, if necessary, cure such alleged delinquency within five (5) business days of receipt of Coastkeeper's notice, then Coast Line Metals shall pay a stipulated payment of One Hundred Dollars ($100). Such stipulated payments shall be made by check payable to: Rose Foundation, and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 38. Payment shall be sent via overnight mail to Rose Foundation, 201 4th Street, Suite 102, Oakland, California. Coast Line Metals agrees to make the stipulated payment within fourteen (14) days after the resolution of the event that precipitated the stipulated payment liability.

## IV. DISPUTE RESOLUTION

41. This Court shall retain jurisdiction over this matter for the Term for the purposes of enforcing its terms and conditions, and adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

42. Meet and Confer: Either party to this Consent Decree may invoke the dispute resolution procedures of this Section IV by notifying the other party in writing of the matter(s) in dispute and of the disputing party's proposal for resolution. The Parties shall then meet and confer in good faith (either telephonically or in person) within ten (10) days of the date of the notice in an attempt to fully resolve the dispute no later than thirty (30) days from the date of the notice.

43. Conference: If the Parties cannot resolve the dispute within thirty (30) days of the meet and confer described in Paragraph 42 above, the Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States District Court for the Central District of California. The Parties agree to request an expedited hearing schedule on the motion. If the parties do not wish to request a conference with a magistrate, they may request a settlement conference.

44. In resolving any dispute arising from this Consent Decree before the Court, the prevailing Party shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions, or as otherwise provided for by statute and/or case law.

## V. MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

45. Coastkeeper's Waiver and Release of Coast Line Metals and Zenk: In consideration of the above, upon the Effective Date of this Consent Decree, Coastkeeper, on its own behalf and on behalf of its officers and directors, releases Coast Line Metals and Zenk, their officers, directors, managers, employees, members, parents, subsidiaries, divisions, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims that were raised in the 60-Day Notice and/or the Complaint up to and including the Termination Date of this Consent Decree.

46. Coast Line Metals' and Zenk's Waiver and Release of Coastkeeper. In consideration of the above, upon the Effective Date of this Consent Decree, Coast Line Metals and Zenk, on their own behalf and on behalf of their officers, directors, employees, parents, subsidiaries, affiliates and each of their successors or assigns, releases Coastkeeper, its officers and directors, from and waives all claims related to the 60-Day Notice and/or the Complaint up to and including the Termination Date of this Consent Decree.

## VI. MISCELLANEOUS PROVISIONS

47. No Admission of Liability: The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. Coast Line Metals and Zenk

maintain and reserve all defenses it may have to any alleged violations that may be raised in the future.

48. Counterparts: This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

49. Authority: The undersigned representatives for Coastkeeper and Coast Line Metals each certify that s/he is fully authorized by the party whom s/he represents to enter into this Consent Decree. A Party's signature to this Consent Decree transmitted by facsimile or electronic mail shall be deemed binding.

50. Construction: The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Permit, the Clean Water Act, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

51. Full Settlement: This Consent Decree constitutes a full and final settlement of this matter.

52. Integration Clause: This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

53. Severability: If any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

54. Choice of Law: The laws of the United States shall govern this Consent Decree.

55. Diligence: Coast Line Metals shall diligently file and pursue all required permit applications for any required BMPs and shall diligently procure contractors, labor, and materials needed to complete all BMPs by the required deadlines.

56. Effect of Consent Decree: Compliance with this Consent Decree does not mean that Coast Line Metals is complying with the Scrap Metal Permit, the Clean Water Act, or any other law, rule, or regulation.

57. Negotiated Settlement: The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one party.

58. Modification of the Consent Decree: This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties and approved by the Court. Any request to modify any provision of the Consent Decree, including but not limited to any deadline(s) set forth herein, must be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

59. Assignment: Subject only to the express conditions contained in this Consent Decree, all the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Settling Parties, and their successors and assigns. In the event that Coast Line Metals' transferee or assign ("Assignee") will continue industrial operations at the Facility, Coast Line Metals shall notify Coastkeeper ten (10) days in advance of the proposed transfer or assignment ("the Assignment Notice") and within ten (10) days following the Assignment Notice, Coast Line Metals will provide Coastkeeper with a written assignment and assumption duly executed by the Facility and the Assignee assigning Coast Line Metals' obligations under this Consent Decree to the Assignee.

60. Force Majeure: Neither of the Parties shall be considered in default in the performance of any of their respective obligations under this Consent Decree when performance becomes impossible due to a Force Majeure event. A Force Majeure event is any circumstance beyond a Settling Party's control, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, pandemic, public health crisis, or natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. A Force Majeure event shall not include normal inclement weather, economic hardship, inability to pay, or employee negligence. Any party seeking to rely upon this Paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Parties shall exercise due diligence to resolve and remove any Force Majeure event.

61. Correspondence: All notices required herein or any other correspondence pertaining to this Consent Decree shall be, the extent feasible, sent via electronic mail transmission to the e-mail address listed below, or if electronic mail is not feasible, then by certified U.S. mail with return receipt, or by hand delivery to the following addresses:

| If to Coastkeeper: | If to Coast Line Metals: |
|---|---|
| Sarah Spinuzzi<br>Email: sarah@coastkeeper.org<br>ORANGE COUNTY COASTKEEPER<br>3151 Airway Avenue, Suite F-110<br>Costa Mesa, CA 92626<br>Phone: (714) 850-1965 | Hank Fajardo<br>Email: hankclmetals@yahoo.com<br>655 South Main Street, Suite 200-360<br>Orange, CA 92868<br>Phone: (714) 345-7903 |

With copies to:
Sarah Lippmann
Email: slippmann@coastkeeper.org
ORANGE COUNTY COASTKEEPER
3151 Airway Avenue, Suite F-110
Costa Mesa, CA 92626
Phone: (714) 850-1965

If to Zenk Family Partnership:
Jason Zenk
C/O Charles H. Pomeroy
Email: cpomeroy@stilespomeroy.com
StilesPomeroy LLP
150 N. Santa Anita Ave., Suite 300
Arcadia, CA 91006
Phone: (626) 243-5599

With copies to:
Charles H. Pomeroy
Email: cpomeroy@stilespomeroy.com
StilesPomeroy LLP
150 N. Santa Anita Ave., Suite 300
Arcadia, CA 91006
Phone: (626) 243-5599

Notifications of communications shall be deemed submitted three (3) days after the date they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

62. If for any reason the District Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the District Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the District Court, this Consent Decree shall immediately

be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

The Parties hereto enter into this Consent Decree and submit it to the Court for its approval and entry as a final judgment.

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date first set forth below.

APPROVED AS TO CONTENT

Dated: August 5, 2026

By: Garry Brown
Garry Brown
Executive Director
Orange County Coastkeeper

Dated: 8/3/2026

By:
Hank Fajardo
Chief Executive Officer
Coast Line Metals Inc.

Dated: 8/4/26

By:
Jason Zenk
Authorized Representative
Zenk Family Partnership

APPROVED AS TO FORM

Dated: August 5, 2026

By: Sarah J. Spinuzzi
Sarah J. Spinuzzi
Attorney for Orange County Coastkeeper

Dated: August 5, 2026

By: [signature]
Charles H. Pomeroy
Attorney for Coast Line Metals Inc. and Zenk Family Partnership

**IT IS SO ORDERED.**
**FINAL JUDGMENT**

Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between Coastkeeper and Coast Line Metals.

Dated: **September 23, 206**

[signature]

Honorable Fred W. Slaughter
United States District Judge
Central District of California